UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PEKIN INSURANCE COMPANY, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) 1:09-cv-0521-TAB-TWP<br>) |
| RODNEY BARBER d/b/a BARBER<br>CONTRACTING, and JOHN A. LOGAN, | )<br>)<br>) |
| Defendants. | ) |

**ORDER GRANTING PLAINTIFF'S
SUMMARY JUDGMENT MOTION**

**I.     Introduction.**

Plaintiff Pekin Insurance Company moved for summary judgment, seeking a declaration that it has no duty under its commercial lines policy to defend and indemnify its named insured, Rodney Barber d/b/a Barber Contracting against two civil actions filed against Barber by John A. Logan: "*John A. Logan, Plaintiff, vs. Donna Wilkins, M.D., Rodney Barber, Joshua Williams, Christine Dely-Stinson, Phil Taylor, George Sheridan, Jr., and Beth Robbins, Defendants,*" Cause No. 18C04-0707-PL-0044, Delaware Circuit Court No. 4 (the "State Lawsuit"); and "*John A. Logan, Plaintiff, vs. Donna Wilkins, M.D., Rodney Barber, Joshua Williams, Christine Dely-Stinson, Phil Taylor, George Sheridan, Jr., and Beth Robbins, Defendants,*" Case No. 1:09-cv-00282-WTL-DML, United States District Court for the Southern District of Indiana, Indianapolis Division (the "Federal Lawsuit").  For the reasons that follow, the Court grants Pekin's unopposed motion for summary judgment.  [Docket No. 49.]

**II.     Legal Standards.**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The case is before the Court based on diversity jurisdiction. Therefore, the Court must apply Indiana law as it predicts the Supreme Court of Indiana would apply it.  *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 712 (7th Cir. 2007).

Under Indiana law, the interpretation of an insurance policy is a question of law. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992).  Accordingly, summary judgment is "particularly appropriate" in this type of action.  *Am. Family Mut. Ins. Co. v. Hall*, 764 N.E.2d 780, 784 (Ind. Ct. App. 2002).  If the language in an insurance policy is clear and unambiguous, the Court will give it its plain and ordinary meaning.  *Tate*, 587 N.E.2d at 668.  Any ambiguities in the language of the insurance policy are to be construed in favor of the insured, Barber.  *Id.*

> Under Indiana law:
>
> An insurer's duty to defend its insured is broader than its duty to indemnify.  We determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation.  *Id.*  If it is revealed that a claim is clearly excluded under the policy, then no defense is required. *Id.*

*Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007) (citations omitted). Because the duty to defend is broader than the duty to indemnity, if there is no duty to defend, there can be no duty to indemnify.  *See, e.g., Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins. Co.,* 791 N.E.2d 816, 823 (Ind. Ct. App. 2003), *trans. denied* (affirming trial court's summary judgment discharging insurer from both duty to defend and duty to

indemnify); *Wright v. Am. States Ins. Co.*, 765 N.E.2d 690, 697 (Ind. Ct. App. 2002) ("[Insurer] did not have a duty to defend or indemnify [Insured] as to this complaint.").

**III.     Background.**

The following facts are undisputed.[1] Logan owned and operated a mobile home park located at 11749 South U.S. 35 in Selma, Delaware County, Indiana (the "Real Estate"). [Docket No. 25 (Ex. 3, p. 4); Document No. 25 (Ex. 5, p. 4)]. On August 14, 2006, the Delaware County Board of Health (the "BOH") condemned thirteen mobile homes on the Real Estate and ordered their removal. [Document No. 25 (Ex. 5, p. 15)].

On September 6, 2006, the BOH filed suit in state court against Logan to enforce the condemnation order. [Document No. 25 (Ex. 3, p. 4); Document No. 25 (Ex. 5, pp. 5, 15-17)]. On October 27, 2006, the state court issued a demolition order, directing the BOH to hire persons to remove the thirteen mobile homes from the Real Estate. [Document No. 25 (Ex. 5, pp. 15-17)]. The BOH hired Barber to complete the demolition and removal of the mobile homes. [Document No. 25, p. 2; Document No. 29, p. 1; Document No. 38, p. 2)].

Shortly after October 27, 2006, Barber entered the Real Estate and demolished fourteen—rather than the ordered thirteen—mobile homes. [Document No. 25 (Ex. 3, p. 6); Document No. 25 (Ex. 5, pp. 7-8)]. Barber demolished the mobile homes without first capping public utilities (including electrical power) and private utility lines (including water and sewer) which service them, leaving Logan with repair expenses and permit problems. [Document No. 25 (Ex. 3, p. 6); Document No. 25 (Ex. 5, p. 18)]. In

---

[1] As a result of Barber's and Logan's failure to oppose Pekin's motion for summary judgment, Barber and Logan conceded to Pekin's version of the facts. S.D. Ind. L.R. 56(e).

two separate places, Barber's use of a backhoe cut a 2" PVC water main, and demolished 4' terra cotta water risers.  [Document No. 25, Ex. 5, p. 8)].

Barber stole a shed, electrical furnaces, electrical meters and boxes, other outbuildings, and other physical property from the Real Estate.  [Document No. 25 (Ex. 3, p. 6); Document No. 25 (Ex. 3, p. 8)].  Barber did not clean up the Real Estate, resulting in a diminution in value of the Real Estate and a loss of rental income. [Document No. 25 (Ex. 3, p. 6); Document No. 25 (Ex. 5, p. 8)].

    A.    *The State Lawsuit.*

On December 15, 2008, Logan filed his "Amended Complaint for Damages" (the "State Lawsuit's Amended Complaint").  [Document No. 25 (Ex. 2)].  The State Lawsuit's Amended Complaint proceeded against Barber on two legal theories: conversion for assuming control of and disposing of the fourteenth mobile home and other property; and negligence in connection with the execution of the Court's demolition order.  [Document No. 25 (Ex. 2, pp. 2-4)].  Pekin provided a defense to Barber against the State Lawsuit's Amended Complaint pursuant to a written reservation of all rights under its Policy.  [Document No. 51 (Ex. 2)].

On June 15, 2009, Barber filed his "Amended Complaint for Damages" (the "State Lawsuit's 2nd Amended Complaint").  [Document No. 25 (Ex. 3)].  The State Lawsuit's 2nd Amended Complaint eliminated the negligence claim, and proceeded against Barber on three legal theories: conversion, theft, and conspiracy.  Logan sought compensatory damages, treble damages, attorney's fees, and injunctive relief. [Document No. 25 (Ex. 3, pp. 6-9)].  Pekin denied coverage for the State Lawsuit's 2nd Amended Complaint, but continued to provide a defense to Barber against the same

pursuant to a written reservation of all rights under the Policy. [Document No. 51 (Ex. 3)].

    B.    *The Federal Lawsuit.*

On March 6, 2009, Logan filed his "Verified Complaint for Damages and Injunctive Relief" (the "Federal Lawsuit's Complaint"). [Document No. 25 (Ex. 4)]. The Federal Lawsuit's Complaint proceeded against Barber on the following legal theories: conversion; theft; violation of 42 U.S.C. § 1981; violation of 42 U.S.C. § 1983; conspiracy to violate Logan's due process rights under the Fourteenth Amendment to the United States Constitution; and conspiracy to violate Logan's right against unreasonable seizures in violation of the Fourth Amendment to the United States Constitution. Logan sought damages, treble damages, attorney's fees, and injunctive relief. [Document No. 25 (Ex. 4, pp. 1-9)]. Pekin denied coverage for the Federal Lawsuit's Complaint, and declined to defend Barber against the same. [Document No. 51 (Ex. 1)].

On August 19, 2009, Logan filed a second "Verified Complaint for Damages and Injunctive Relief (the "Federal Lawsuit's Amended Complaint"). The Federal Lawsuit's Amended Complaint proceeded against Barber on the same legal theories, and sought the same relief. [Document No. 25 (Exhibit 5)]. Pekin denied coverage for the Federal Lawsuit's Amended Complaint, and declined to defend Barber against the same. [Document No. 51 (Ex. 4)].

    C.    *The Policy.*

Pekin's Policy [Docket No. 50, Ex. 1] included Commercial General Liability ("CGL") Bodily Injury and Property Damage Liability ("BI/PD"), and CGL Personal

Injury ("PI") and Advertising Injury ("AI") coverages. The CGL BI/PD coverage excluded expected or intended injury and property damage arising out of work.

**IV. Discussion.**

In support of its motion for summary judgment, Pekin argues that neither the State Lawsuit nor the Federal Lawsuit triggers the CGL BI/PD or CGL PI/AI insuring agreements, and if they do, they are subject to Policy exclusions. Under Indiana law, the insured bears the initial burden of showing that its claim is covered by the policy. The burden then shifts to the insurer to prove that an exclusion applies. *Aearo Corp. v. Am. Int'l Specialty Lines Ins. Co.*, 676 F. Supp. 2d 738, 744 (S.D. Ind. 2009). In this case, Pekin's summary judgment motion is unopposed, and Defendants have not met their burden to prove coverage.[2]

*A. CGL BI/PD Insuring Agreement.*

The CGL BI/PD coverage insuring agreement requires "bodily injury" or "property damage" caused by an "occurrence."

**1. "Bodily Injury"**

Bodily injury is defined to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Neither the State Lawsuit nor the Federal Lawsuit alleges that Logan sustained bodily injury, sickness or disease because of Barber's conduct.

**2. "Property Damage"**

Property damage is defined to include "physical injury to tangible property," and "loss of use of tangible property that is not physically injured." Part of the State Lawsuit

and the Federal Lawsuit allege "property damage." Logan's allegation that Barber damaged electrical, water, and sewer utility lines while demolishing the mobile homes, as well as the PVC water main terra cotta water risers, involves physical injury to tangible property.

Other parts of the State Lawsuit and Federal Lawsuit do not allege "property damage." Logan's allegation of a diminution in value of the Real Estate does not qualify as "property damage." *Aetna Life & Cas. v. Patrick Indus., Inc.*, 645 N.E.2d 656, 661–62 (Ind. Ct. App. 1995), *trans. denied*. Under the policy language, Logan's claim for attorney's fees, allegation that Barber stole property, and request for injunctive relief do not qualify as property damage.

### 3. "Occurrence"

Occurrence is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." In the context of liability coverage, an "accident" means "an unexpected happening without an intention or design." *Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1002 (Ind. 2009) (quoting *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1283 (Ind. 2006).

Many of the claims asserted by Logan in the State Lawsuit and the Federal Lawsuit do not allege an "accident" or "occurrence." Rather, they allege conduct intended and designed to cause injury and damages. Other claims, such as those for property damage from Barber's severing the water main and failing to cap the utilities, allege intentional acts with unintentional consequences. These acts may be occurrences. *Tri-Etch*, 909 N.E.2d at 1002 ("We reaffirmed that 'an accident means an unexpected

---

[2] Despite this shortcoming, the Court has further examined the exclusions which further

happening without an intention or design,' and found the policy applied because it was clear that the drowning was unintended even if the push was an intentional act."). In any event, the "damage to property" exclusion discussed below excludes coverage for any property damage resulting from an occurrence.

### a. The Conversion Claim.

Logan alleged that Barber knowingly and intentionally exercised unauthorized control over Logan's property with the intent to deprive Logan of the use or value thereof. This language alleges a conversion. *See* Ind. Code § 35-43-4-3.

In *Jim Barna Log Systems Midwest, Inc. v. General Casualty Insurance Co.*, 791 N.E.2d 816 (Ind. Ct. App. 2003), *trans. denied,* the Indiana Court of Appeals concluded that a conversion claim against the insured did not allege a covered "accident" or "occurrence." *Jim Barna*, 791 N.E.2d at 829.

### b. The Theft Claim.

Logan also alleged that Barber committed theft. Indiana Code section 35-43-4-2(a) defines "theft" as follows:

> A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony. However, the offense is a Class C felony if the fair market value of the property is at least one hundred thousand dollars ($100,000).

Under section 35-21-2-2:

> (a) A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.
>
> (b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

---

support Plaintiff's summary judgment motion.

8

Indiana has not addressed the issue of whether "theft" can qualify as a covered "accident" or "occurrence." The Seventh Circuit, however, concluded that a theft claim did not qualify as an "accident" or "occurrence." *See GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112 (7th Cir. 1995) (applying Texas law). Given *Jim Barna*, the result is the same under Indiana law because theft, like conversion, requires a knowing or intentional act. Ind. Code § 35-43-4-3.

### c. **Conspiracy Claim.**

As recently noted by the Indiana Court of Appeals:

> A civil conspiracy is defined as "a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Id.*

*Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008). Conspiracy, like conversion and theft, requires an intentional act and therefore cannot be an accident or occurrence.

### d. **Violation of 42 U.S.C. § 1981.**

In order to prevail under § 1981, Logan must prove that he has been the victim of intentional and purposeful discrimination. *E.g., Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 669 (7th Cir. 1996). Although Indiana courts have yet to address whether intentional discrimination is an accident or occurrence, other jurisdictions recognize that a § 1981 claim does not involve a covered accident or occurrence. *See, e.g., Travelers Cas. & Sur. Co. v. Rage Admin. & Mktg. Servs., Inc.*, 42 F. Supp. 2d 1159, 1166–67 (D. Kan. 1999); *Sphere Drake Ins., P.L.C. v. Shoney's, Inc.*, 923 F. Supp. 1481, 1492 (M.D. Ala. 1996).

### e. **Violation of 42 U.S.C. § 1983.**

To prevail on a claim under 42 U.S.C. §1983, Logan must prove intentional and purposeful discrimination. *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 926 (7th Cir. 2007). This principle was applied in the insurance setting in *City of Muncie v. United National Insurance Co.*, 564 N.E.2d 979 (Ind. Ct. App. 1991). In *City of Muncie*, the insured was sued for violation of 42 U.S.C. § 1983 in connection with the discharge of employees. The Indiana Court of Appeals held that an alleged § 1983 violation did not qualify as a covered occurrence because it required an intentional act. *Id.* at 983. Barber's alleged § 1983 violation therefore does not allege a covered accident or occurrence.

### f. **Violation of Fourteenth Amendment.**

In *City of Muncie*, the Indiana Court of Appeals concluded that an allegation that the insured violated the Due Process Clause of the Fourteenth Amendment did not allege a covered "occurrence." *Id.* at 983. Logan's allegation that Barber violated the Fourteenth Amendment therefore does not allege a covered "accident" or "occurrence."

### g. **Violation of Fourth Amendment.**

Logan's allegations against Barber involve the seizure of the mobile home and other property—i.e., the conversion and theft. Because conversion and theft do not qualify as a covered "occurrence," the fact that they were pleaded as an unreasonable seizure in violation of the Fourth Amendment likewise does not state a covered "occurrence."

B.  *CGL BI/PD Exclusions.*

Because some of Logan's claims allege property damage, the Court turns to the policy's exclusions.

### 1. The "Intentional Acts" Exclusion.

The Policy excludes coverage for "property damage" expected or intended from the standpoint of the insured." An injury "intended" by an insured is:

> an intentional act of the insured which was intended to cause injury. The latter intent may be established either by showing an actual intent to injure or by showing the nature and character of the act to be such that intent to cause harm to the other party must be inferred as a matter of law.

*Ind. Farmers Mut. Ins. Co. v. Graham*, 537 N.E.2d 510, 511 (Ind. Ct. App. 1989). An injury is "expected" if "the insured acted although he was consciously aware that the harm caused by his actions was practically certain to occur." *Id.* at 512.

As discussed above, claims for conversion, theft, conspiracy, and violation of §§ 1981 and 1983, the Fourteenth Amendment, and the Fourth Amendment require an intentional act and are therefore subject to the intentional acts exclusion.

### 2. The "Damage to Property" Exclusion.

The Policy's CGL BI/PD coverage also excludes property damage arising out of the insured's operations or resulting from the insured's work. Logan alleged that property damage occurred in the course of Barber's work to remove the mobile homes, and the CGL BI/PD coverage therefore does not apply.

C.  *CGL AI/PI Insuring Agreement.*

The Policy's CGL AI/PI coverage does not apply because neither the State Lawsuit nor the Federal Lawsuit alleges an advertising injury, and neither lawsuit alleges personal injury.

The Policy defines the term "personal injury" as follows:

*"Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:*

*a.    False arrest, detention or imprisonment;*

*b.    Malicious prosecution;*

*c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;*

*d.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or*

*e.    Oral or written publication of material that violates a person's right of privacy.*

Of the enumerated offenses, the only one that could potentially be implicated by the State Lawsuit and the Federal Lawsuit is "wrongful entry."

Originally, ISO's version of the "wrongful entry" offense read as follows:

wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies.

Several courts, including the Indiana Court of Appeals, concluded that the language was ambiguous. *See, e.g., Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 937 (Ind. Ct. App. 1999). ISO responded by modifying the language to read as follows:

wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor.

Other jurisdictions have concluded that the revised "wrongful entry" provision is unambiguous, and applied only to entries committed by the owner, landlord, or lessor of the premises. *Monarch Greenback, LLC v. Monticello Ins. Co.*, 118 F. Supp. 2d 1068,

1077 (D. Idaho 1999); *U.S. Fid. & Guar. Co. v. Goodwin*, 950 F. Supp. 24, 26 (D. Me. 1996); *Whittier Props., Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84, 94 (Alaska 2008); *TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483, 489 (Colo. Ct. App. 1997).

Barber was not the owner, landlord or lessor of the Real Estate. As such, neither the State Lawsuit nor the Federal Lawsuit alleges the personal injury offense of "wrongful entry."

D. *Treble Damages*

Logan seeks treble damages for Barber's violation of Indiana Code section 35-43-4-2. Indiana's treble damages statute expressly states that Barber's exposure for the same is not insurable:

> An individual found liable in a civil action under this chapter (or IC 34-4-30 before its repeal) for violating IC 35-43-4-2 or IC 35-43-4-3 may not be indemnified or insured for any penalties, damages, or settlement arising from the violation.

I.C. § 34-24-3-2(b).

**V.     Conclusion.**

Pekin has no duty under its Policy to defend and indemnify Barber against the state or federal actions at issue. Thus, as a matter of law, Pekin is entitled to summary judgment on its declaratory judgment action. The Court grants Pekin's motion for summary judgment [Document No. 49], and judgment shall be entered accordingly.

Dated:     03/31/2011

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

13

Copies to:

James A. Schafer
PAINTER & SCHAFER
jschafer@painterschafer.com

Mark R. Smith
SMITH FISHER MAAS & HOWARD, P.C.
msmith@smithfisher.com

John Thrasher
john_thrasher@yahoo.com